**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **DRF LOGISTICS, LLC**, *et al.*, | § | Case No. 24-90447 (CML) |
| | § | |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |
| | § | |

## DEBTORS' JOINT PLAN OF LIQUIDATION

**WEIL, GOTSHAL & MANGES LLP**
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511


*Proposed Attorneys for Debtors
and Debtors in Possession*


August 9, 2024
Houston, Texas

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock (*pro hac vice* pending)
Ronit J. Berkovich (*pro hac vice* pending)
Lauren Tauro (*pro hac vice* pending)
Alexander P. Cohen (24109739)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  DRF Logistics, LLC (6861) and DRF, LLC (7236).  The Debtors' mailing address is 7171 Southwest Parkway, Bldg. 300, Suite 400, Austin, TX 78735.

# **Table of Contents**

ARTICLE I.         Definitions and Interpretation.................................................................................1

1.1    Definitions.........................................................................................................1
1.2    Interpretation; Application of Definitions; Rules of Construction. ...........................12
1.3    Reference to Monetary Figures. ...........................................................................12
1.4    Controlling Document. ........................................................................................12
1.5    Consultation, Information, Notice, and Consent Rights. .........................................12

ARTICLE II.        Administrative Expense Claims, Fee Claims, Priority Tax Claims, DIP Claims, and
                   Restructuring Expenses. ...................................................................................13

2.1    Treatment of Administrative Expense Claims. .......................................................13
2.2    Treatment of Fee Claims. ....................................................................................13
2.3    Treatment of Priority Tax Claims. ........................................................................14
2.4    Treatment of DIP Claims. ...................................................................................15

ARTICLE III.       Classification of Claims and Interests. ...............................................................15

3.1    Classification in General. ....................................................................................15
3.2    Summary of Classification of Claims and Interests. ...............................................15
3.3    Special Provision Governing Unimpaired Claims. ..................................................16
3.4    Elimination of Vacant Classes. ............................................................................16
3.5    Voting Classes; Presumed Acceptance by Non-Voting Classes. ...............................16
3.6    Voting; Presumptions; Solicitation. ......................................................................17
3.7    Cramdown. ........................................................................................................17
3.8    No Waiver. ........................................................................................................17

ARTICLE IV.        Treatment of Claims and Interests. ....................................................................17

4.1    Class 1:  Other Priority Claims. ...........................................................................17
4.2    Class 2:  Other Secured Claims. ..........................................................................18
4.3    Class 3:  Oaktree Secured Claims. .......................................................................18
4.4    Class 4:  General Unsecured Claims. ...................................................................18
4.5    Class 5:  Interdebtor Claims. ..............................................................................19
4.6    Class 6A:  Existing DRF Logistics Equity Interests. ...............................................19
4.7    Class 6B:  Interdebtor Interests. ..........................................................................19

ARTICLE V.         Means for Implementation. ...............................................................................20

5.1    Sources of Consideration for Plan Distribution. ....................................................20
5.2    Liquidating Agent................................................................................................20
5.3    Implementation. .................................................................................................23
5.4    Compromise and Settlement of Claims, Interests, and Controversies. ......................24
5.5    Limited Liability Company Action. .......................................................................24
5.6    Cancellation of Existing Securities and Agreements................................................24
5.7    Settlement and Release Agreement. ......................................................................25
5.8    Merger or Dissolution of Debtors..........................................................................25
5.9    Effectuating Documents; Further Transactions. .....................................................25
5.10   Wind Down. ......................................................................................................26
5.11   Closing of the Chapter 11 Cases. .........................................................................26
5.12   Certain Tax Matters ...........................................................................................26

ARTICLE VI.        Governance .......................................................................................................26

6.1     Board of Managers and Officers. ............................................................................26
6.2     Governing Documents. ...........................................................................................27

ARTICLE VII.        Distributions. ...............................................................................................27

7.1     Distributions Generally. .........................................................................................27
7.2     No Postpetition Interest on Claims. .......................................................................27
7.3     Distribution Record Date. .......................................................................................27
7.4     Distributions on the Effective Date or as Soon as Reasonably Practicable Thereafter...........27
7.5     Periodic Distributions of the Senior Claims Recovery Pool and Unsecured Claims Subsequent
        Distribution. ...........................................................................................................28
7.6     Date of Distributions. .............................................................................................28
7.7     Distributions After Effective Date. .........................................................................29
7.8     Plan Distributions Made by Liquidating Agent. .....................................................29
7.9     Delivery of Distributions. .......................................................................................29
7.10    Unclaimed Property. ...............................................................................................29
7.11    Satisfaction of Claims. ............................................................................................30
7.12    Manner of Payment Under Plan. .............................................................................30
7.13    Minimum Distribution. ...........................................................................................30
7.14    No Distribution in Excess of Amount of Allowed Claim. ......................................30
7.15    Allocation of Distributions Between Principal and Interest. ..................................30
7.16    Setoffs and Recoupments. ......................................................................................30
7.17    Expenses of Liquidating Agent. .............................................................................31
7.18    Withholding and Reporting Requirements. ............................................................31

ARTICLE VIII.       Procedures for Resolving Claims. .................................................................32

8.1     Allowance of Claims. ..............................................................................................32
8.2     Objections to Claims. ..............................................................................................32
8.3     Estimation of Claims. ..............................................................................................32
8.4     Resolution of Claims. ..............................................................................................32
8.5     Claim Resolution Procedures Cumulative. .............................................................33
8.6     Adjustment to Claims Register Without Objection. ................................................33
8.7     No Distributions Pending Allowance. .....................................................................33
8.8     Distributions After Allowance .................................................................................33

ARTICLE IX.        Executory Contracts and Unexpired Leases. .................................................33

9.1     Rejection of Executory Contracts and Unexpired Leases........................................33
9.2     Survival of the Debtors' Indemnification Obligations. ...........................................34
9.3     Determination of Cure Disputes and Deemed Consent. ..........................................34
9.4     Rejection Damages Claims. .....................................................................................36
9.5     Insurance Policies. ...................................................................................................36
9.6     Assignment. .............................................................................................................36
9.7     Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...37
9.8     Reservation of Rights. .............................................................................................37

ARTICLE X.         Conditions Precedent to Confirmation of Plan and Occurrence of Effective Date...37

10.1    Conditions Precedent to Confirmation. ...................................................................37
10.2    Conditions Precedent to Effective Date...................................................................38
10.3    Waiver of Conditions Precedent. .............................................................................38
10.4    Effect of Failure of a Condition. .............................................................................39

ARTICLE XI.        Effect of Confirmation. ................................................................................39

11.1     Binding Effect. ........................................................................................39
11.2     Vesting of Assets. ....................................................................................39
11.3     Pre-Confirmation Injunctions and Stays. ...............................................40
11.4     Injunction Against Interference with Plan. .............................................40
11.5     Plan Injunction. .......................................................................................40
11.6     Releases. ..................................................................................................41
11.7     Exculpation. .............................................................................................44
11.8     Injunction Related to Releases and Exculpation ....................................44
11.9     Subordinated Claims. ..............................................................................45
11.10    Retention of Causes of Action and Reservation of Rights. .....................45
11.11    Ipso Facto and Similar Provisions Ineffective. ......................................45

ARTICLE XII.        Retention of Jurisdiction. .....................................................................45

12.1     Retention of Jurisdiction. ........................................................................45
12.2     Courts of Competent Jurisdiction. ..........................................................47

ARTICLE XIII.       Miscellaneous Provisions. ....................................................................48

13.1     Statutory Fees. .........................................................................................48
13.2     Exemption from Certain Transfer Taxes. ................................................48
13.3     Dissolution of Creditors' Committee. .....................................................48
13.4     Request for Expedited Determination of Taxes. .....................................48
13.5     Dates of Actions to Implement Plan. ......................................................49
13.6     Amendments. ...........................................................................................49
13.7     Revocation or Withdrawal of Plan. .........................................................49
13.8     Governing Law. .......................................................................................49
13.9     Immediate Binding Effect. ......................................................................50
13.10    Waiver of Stay. ........................................................................................50
13.11    Successors and Assigns. ..........................................................................50
13.12    Entire Agreement. ...................................................................................50
13.13    Computing Time. .....................................................................................50
13.14    Exhibits to Plan. ......................................................................................50
13.15    Notices. ....................................................................................................51
13.16    Reservation of Rights. .............................................................................52

Each of DRF Logistics, LLC and DRF, LLC (each a "**Debtor**" and together, the "**Debtors**") proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Section 1.1 below.

## ARTICLE I.          DEFINITIONS AND INTERPRETATION.

### 1.1   *Definitions.*

The following terms shall have the respective meanings specified below:

*Administrative Expense Claim* means any Claim for a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under sections 327, 328, 330, 365, 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses, (ii) Fee Claims, and (iii) Independent Manager Fee Claims, but excluding DIP Claims and Priority Tax Claims.

*Administrative Expense Claims Bar Date* means the first Business Day that is twenty-one (21) days following the Effective Date, except as otherwise specifically set forth in this Plan.

*Affiliate* means, with respect to any specified Entity: (a) an "affiliate," as defined in section 101(2) of the Bankruptcy Code, of such specified Entity as if such specified Entity were a debtor in a case under the Bankruptcy Code; or (b) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by or is under common control with the specified Entity.  As used in clause (b) of the prior sentence, "control" includes (without limitation) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the specified Entity (whether through the ownership of equity, by contract or otherwise).  For the avoidance of doubt, no Debtor shall be considered an Affiliate of Pitney Bowes.

*Allowed* means, means, with respect to any Claim against or Interest in a Debtor, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in this Plan or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim or Interest expressly Allowed under this Plan, or (iv) any Claim that is listed in the Debtors' Schedules as liquidated, non-contingent, and undisputed; *provided* that, the Debtors or Liquidating Agent, as applicable, will retain all claims and defenses with respect to Allowed Claims that are unimpaired pursuant to this Plan, except that no such Claims shall be retained against Released Parties other than as expressly set forth in ARTICLE XI of this Plan.

**Amended and Restated LLC Agreement** means that certain *Amended and Restated Limited Liability Company Agreement of DRF Logistics, LLC*, effective as of August 8, 2024, by and between PBIH and Hilco.

**Asset** means any right, title, and interest of a Debtor in and to property of whatever type or nature, including real, personal, mixed, intellectual, tangible, and intangible.

**Avoidance Actions** means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors or their Estates arising under (i) chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, and (ii) applicable non-bankruptcy law including any state or foreign law governing fraudulent or otherwise avoidable obligations, transfers or conveyances.

**Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code or if the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court, in each case as applicable to the Chapter 11 Cases.

**Business Day** means any calendar day that is not a Saturday, Sunday, or other calendar day on which banks are authorized or required to be closed in New York, New York.

**Cash** means legal tender of the United States of America.

**Cause of Action** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, recoupment right, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, reimbursement claim, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, asserted or unasserted, accrued or unaccrued, assertable directly or derivatively (including on a theory of veil piercing, alter-ego, vicarious liability, predecessor liability, successor liability, mere continuation, domination and control, mere instrumentality, inadequate capitalization, single business enterprise or common enterprise, equitable subordination or recharacterization), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory (including under any state or federal securities laws), and whether arising under federal law, state statutory law, common law, or any other applicable international or domestic law, rule, statute, regulation, treaty, right, duty, requirement,

2

or otherwise.   For the avoidance of doubt, "Cause of Action" includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to Claims or Interests, (iii) any claim pursuant to section 362 of the Bankruptcy Code, (iv) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (v) any Avoidance Actions.

*Chapter 11 Case* means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtor's cases under chapter 11 of the Bankruptcy Code.

*Claim* means a "claim," as defined in section 101(5) of the Bankruptcy Code.

*Claims and Noticing Agent* means Stretto, Inc. the claims, noticing, and solicitation agent retained by the Debtors.

*Claims Register* means the official register of Claims maintained by the Claims and Noticing Agent in the Chapter 11 Cases.

*Class* means any group of Claims or Interests classified under this Plan pursuant to section 1122(a) of the Bankruptcy Code.

*Confirmation Date* means the date on which the Bankruptcy Court enters the Confirmation Order.

*Confirmation Hearing* means the hearing held by the Bankruptcy Court regarding approval of the Disclosure Statement and confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to PBI and the DIP Lender and consistent in all respects with the RSA.

*Creditors' Committee* means any official committee of unsecured creditors of the Debtors that may be appointed in the Chapter 11 Cases by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code, the membership of which may be further reconstituted from time to time.

*Cure Amount* means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (ii) permit the Debtors to assume or assume and assign such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

*Cure Dispute* means an unresolved objection regarding assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the

meaning of section 365 of the Bankruptcy Code), or any other issue relating to assumption of an executory contract or unexpired lease.

       **D&O Insurance Policy** means each directors' and officers' insurance policy (including any "tail policy") in effect or purchased as of the Petition Date.

       **Debtor(s)** has the meaning set forth in the introductory paragraph of this Plan.

       **Debtor Distribution Ratio** means the ratio of Estate Assets and expenses to be allocated between Debtor DRF Logistics, LLC and Debtor DRF, LLC.  Such ratio shall be determined pursuant to a formula disclosed in the Plan Supplement that shall account for the percentage of proceeds from sales of Estate Assets and postpetition expenses and payments that are attributable to each Debtor.

       **Definitive Documents** has the meaning set forth in the RSA.

       **DIP Claim** means all Claims held by a DIP Lender on account of, arising under, or relating to the DIP Loans, the DIP Note Documents, or the DIP Orders, including DIP Obligations.

       **DIP Claims Recovery Pool** means any Cash of the Debtors available for distribution as of the Effective Date, excluding the PB Settlement Amount, following the funding of the (i) Senior Claims Recovery Pool (including amounts needed to fund the Fee Escrow Account) and (ii) Wind Down Reserve.

       **DIP Commitments** means the commitments in respect of the DIP Loans in accordance with the terms set forth in the DIP Note and the DIP Orders.

       **DIP Note Documents** has the meaning set forth in the DIP Orders.

       **DIP Lender** means PBIH in its capacity as lender under the DIP Note.

       **DIP Loans** means the loans extended to DRF Logistics, LLC by the DIP Lender pursuant to the terms of the DIP Note Documents and DIP Orders.

       **DIP Note** means that certain *Debtor in Possession Secured Multi-Draw Term Promissory Note* entered into as of August 8, 2024, by and among DRF Logistics, LLC, as borrower, and DRF, LLC, as guarantor, and the DIP Lender, as approved by the DIP Orders, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms.

       **DIP Obligations** has the meaning set forth in the DIP Orders.

       **DIP Orders** means, the Interim DIP Order and the Final DIP Order.

       **Disclosure Statement** means the disclosure statement in respect of this Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time, and which is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3018,

and which shall be in form and substance reasonably acceptable to PBI and the DIP Lender and shall be consistent in all respects with the RSA.

**Disputed** means, with respect to a Claim, (i) any Claim that is disputed under <u>ARTICLE VIII</u> of this Plan or as to which the Debtors or any party in interest have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order, (ii) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed, (iii) any Claim that is listed in the Schedules as unliquidated, contingent or disputed, and as to which no request for payment or proof of Claim has been filed, or (iv) any Claim that is otherwise disputed by any of the Debtors or Liquidating Agent or any party in interest in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order.  To the extent the Debtors or any party in interest dispute the amount of an asserted Claim, such Claim shall be deemed Allowed in the amount that is not disputed, if any, and a Disputed Claim as to the balance of such Claim.

**Distribution Record Date** means the Effective Date.

**Effective Date** means the date that is the first Business Day on which all conditions to the effectiveness of this Plan set forth in <u>Section 10.2</u> of this Plan have been satisfied or waived in accordance with <u>Section 10.3</u> of this Plan.

**Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

**Estate(s)** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

**Exculpated Parties** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law:  (i) the Debtors; (ii) the Liquidating Agent; (iii) the Independent Managers; and (iv) the Creditors' Committee.

**Existing DRF Logistics Equity Interests** means all Interests held by Hilco and PBIH in Debtor DRF Logistics LLC.

**Fee Claim** means a Claim for fees and expenses incurred by a Professional on or after the Petition Date through and including the Effective Date under sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code.

**Fee Escrow Account** means an interest-bearing account funded by the Debtors on the Effective Date with Cash in an amount equal to the total estimated amount of Fee Claims.

**Final DIP Order** means the order entered by the Bankruptcy Court approving, among other things, the DIP Loans and the parties' rights with respect thereto on a final basis.

**Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or

other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired. However, notwithstanding anything herein to the contrary, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

*General Unsecured Claim* means any unsecured Claim, not including any Interdebtor Claims, against any Debtor that is not entitled to priority under the Bankruptcy Code or any Final Order.

*Governmental Unit* has the meaning set forth in section 101(27) of the Bankruptcy Code.

*Hilco* means Hilco Commercial Industrial, LLC.

*Impaired* means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

*Independent Manager Fee Claims* means Allowed Administrative Expense Claims for any and all unpaid fees and expenses due to the independent managers of the Debtors pursuant to their respective agreements with DRF Logistics, LLC for the period between the Petition Date and the Effective Date.

*Independent Managers* means the independent managers on the board of managers for DRF Logistics, LLC between the Petition Date and the Effective Date, including Alan Carr and Dhiren Fonseca.

*Interdebtor Claim* means a Claim against a Debtor held by another Debtor.

*Interdebtor Interest* means an Interest in Debtor DRF, LLC held by Debtor DRF Logistics, LLC.

*Interest* means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, including all shares, units, common stock, preferred stock, membership interests, partnership interests or other instruments evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and whether fully vested or vesting in the future, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in a Debtor, that existed immediately before the Effective Date.

*Interim DIP Order* means the order entered by the Bankruptcy Court approving, among other things, the DIP Loans and the parties' rights with respect thereto on an interim basis.

*IRS* means the United States Internal Revenue Service.

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Liquidating Agent* means Hilco.

*Note Purchase Agreement* means that certain Note Purchase Agreement, dated as of July 31, 2023, by and among Pitney Bowes, the noteholder representative thereunder, the subsidiary guarantors and the noteholders from time to time (as may be amended, supplemented or otherwise modified from time to time).

*Note Purchase Documents* means, collectively, all agreements, documents, guaranties, and instruments, including the Note Documents (as defined in the Note Purchase Agreement) entered into in connection with the Note Purchase Agreement.

*Oaktree* means Oaktree Capital Management, L.P., and/or any of its Affiliates or funds.

*Oaktree Additional Recovery Amount* means any Post-Effective Date Available Cash, Surplus Reserved Cash, and Surplus Senior Claims Recovery Pool Cash available for distribution on account of Allowed Oaktree Secured Claims in accordance with the Waterfall until such time as the Allowed Oaktree Secured Claims are paid in full in Cash.

*Oaktree Initial Payment* means $3 million of the PB Settlement Amount, which shall be distributed to holders of Allowed Oaktree Secured Claims.

*Oaktree Secured Claims* means the Secured Claim held by Oaktree against the Debtors, including any Claim arising from the Secured Senior Takeback Note; *provided* that for the avoidance of doubt, the Oaktree Secured Claims do not include any Claim or obligation related to the Note Purchase Agreement or the Note Purchase Documents against Pitney Bowes or any other non-Debtor.

*Other Priority Claim* means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

*Other Secured Claim* means any Secured Claim other than (i) DIP Claims (ii) and Oaktree Secured Claims.

*PBI* means Pitney Bowes, Inc.

*PBIH* means Pitney Bowes International Holdings, Inc.

*PB Settlement Amount* means Cash not to exceed $18.5 million, which shall be provided by Pitney Bowes, pursuant to the Settlement and Release Agreement, to fund the Oaktree Initial Payment and Unsecured Claims Initial Distribution.  For the avoidance of doubt, the PB Settlement Amount will be equal to (i) the amount of the Oaktree Initial Payment plus (ii) the amount of the Unsecured Claims Initial Distribution, each calculated in accordance with this Plan.

***PB Unsecured Claims*** means any unsecured Claims held by Pitney Bowes against the Debtors, including any Claim arising from that certain *Amended and Restated Global Intercompany Note*, dated as of July 31, 2023, between the Debtors and PBIH.

***Petition Date*** means August 8, 2024.

***Pitney Bowes*** means PBI together with its Affiliates.

***Plan*** means this joint chapter 11 plan of reorganization or liquidation, including all exhibits, annexes, supplements, and schedules hereto (including the Plan Supplement), as may be amended, supplemented, or modified from time to time in accordance with the Bankruptcy Code and the terms of this Plan.

***Plan Distribution*** means the payment or distribution of consideration to holders of Allowed Claims and Allowed Interests under this Plan.

***Plan Supplement*** means a supplemental appendix to this Plan, consistent in all respects with the RSA, containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of this Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and Bankruptcy Rules, which may include: (i) the Schedule of Retained Causes of Action; (ii) the Schedule of Assumed Contracts; (iii) the Wind Down Budget; and (iv) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtors.  Through the Effective Date, the Debtors shall have the right to amend any schedules, exhibits, or amendments to any of the documents contained in, and exhibits to, the Plan Supplement in accordance with the terms of this Plan and the RSA.

***Post-Effective Date Available Cash*** means with respect to each Wind Down Estate, any Cash received by such Wind Down Estate after the Effective Date, including the proceeds from the sale of any or all Estate Assets, and any other non-Cash Assets of such Debtor that may become Cash, including proceeds from such Estate's Causes of Action.  For the avoidance of doubt, Post-Effective Date Available Cash shall not include (and shall be net of) the Oaktree Initial Payment or the Unsecured Claims Initial Distribution.

***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

***Pro Rata*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

***Professional*** means any Entity retained by order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

***Related Parties*** means with respect to an Entity, that Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' predecessors, successors, and assigns, and their respective current and former subsidiaries, officers, directors, principals, equity

holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investments vehicles, and Representatives.

**Released Parties** means each of the following in their capacity as such: (i) the Debtors; (ii) the Liquidating Agent; (iii) Pitney Bowes; (iv) the DIP Lender; (v) Oaktree; (vi) Hilco; (vii) the Creditors' Committee, (viii) the Wind Down Estates; (ix) holders of Claims and Interests who vote to accept this Plan and do not opt out of granting the releases set forth herein; and (x) with respect to each of the foregoing Entities in clauses (i) through (viii), such Entity's Related Parties. Notwithstanding the foregoing, any Entity that opts out of the releases set forth in this Plan will not be a Released Party.

**Releasing Parties** means each of the following in their capacity as such: (i) the Debtors; (ii) the Liquidating Agent (iii) Pitney Bowes; (iv) the DIP Lender; (v) Hilco; (vi) the Creditors' Committee; (vii) the Wind Down Estates; (viii) the holders of Claims or Interests whose vote to accept or reject this Plan is solicited but that do not vote either to accept or to reject this Plan and do not opt out of granting the releases set forth herein; (ix) the holders of Claims or Interests that vote, or are deemed, to reject this Plan or that are presumed to accept this Plan but do not opt out of granting the releases set forth herein; (x) the holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (xi) any other Released Party (in each case with respect to the foregoing, with the exception of Oaktree).

**Reinstate, Reinstated, or Reinstatement** means with respect to Claims and Interests, the treatment provided for in section 1124(2) of the Bankruptcy Code.

**Representative** means any Entity's attorneys, accountants, investment bankers, consultants, professional advisors, independent auditors, trustees, fiduciaries, agents, fund advisors, investment managers, investment advisors, sub-advisors, and sub-managers, and other professionals, and each of their respective current and former officers, directors, principals, equity holders (regardless whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, and advisory board members, each in their capacity as such.

**RSA** means that certain *Restructuring Support Agreement*, dated as of August 8, 2024, by and among the Debtors, PBI, PBIH, and Oaktree, including all exhibits, annexes, and schedules attached thereto, as the same may be amended, supplemented, or otherwise modified from time to time.

**Schedules** means, collectively, any schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors with the Bankruptcy Court and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, supplemented, or otherwise modified from time to time.

**Secured Claim** means a Claim (i) secured by a Lien on any Debtor's interest in property to the extent of the value of such interest as (a) set forth in this Plan, (b) agreed to by the

holder of such Claim and the Debtors with the consent of the DIP Lender, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

**Secured Senior Takeback Note** means that certain *Secured Senior Takeback Note*, dated as of August 8, 2024, issued by the Debtors to Oaktree.

**Security** means any "security" as such term is defined in section 101(49) of the Bankruptcy Code.

**Senior Claim** means any Administrative Claim, Priority Tax Claim, Other Priority Claim, or Other Secured Claim.

**Senior Claims Recovery Pool** means the Cash pool established pursuant to this Plan, containing, on the Effective Date, the amount of Cash estimated by the Debtors subject to the review and consent of the DIP Lender, each acting in good faith, to be necessary to pay holders of Allowed Senior Claims, plus the total Disputed amounts of such Claims until such Claim is Allowed or disallowed as applicable.  For the avoidance of doubt, the Senior Claims Recovery Pool shall be used to fund the Fee Escrow Account, but the use of funds in the Fee Escrow Account shall be limited to payment of Professional's Fee Claims.

**Settlement and Release Agreement** means that certain *Settlement and Release Agreement*, dated as of August 8, 2024, by and between the Debtors, PBI, and PBIH, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

**Statutory Fees** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

**Surplus Reserved Cash** means a surplus in funding of the Wind Down Reserve as may be released from the Wind Down Reserve by the Liquidating Agent from time to time pursuant to Section 7.4 of this Plan.

**Surplus Senior Claims Recovery Pool Cash** means a surplus in the funding of the Senior Claims Recovery Pool as may be released from the Senior Claims Recovery Pool by the Liquidating Agent from time to time pursuant to Section 7.4 of this Plan.

**U.S. Trustee** means the United States Trustee for Region 7.

**Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**Unsecured Claims Initial Distribution** means Cash, to be distributed in accordance with Section 4.4 of this Plan, equal to the lesser of (i) $12.5 million or (ii) 10% of the aggregate amount of all Allowed General Unsecured Claims; *provided*, *however*, such Cash amount shall increase by $3 million if the Effective Date occurs on or prior to November 29, 2024.

**Unsecured Claims Subsequent Distribution** means any Cash (including any Cash proceeds from the liquidation of Assets) of the Debtors, to Holders of Unsecured Claims in accordance with the Waterfall, following payment in full or funding, as applicable, of (i) all Senior Claims, (ii) the Wind Down Reserve, (iii) the DIP Claims Recovery Pool, (iv) the Oaktree Initial Payment, and (v) the Unsecured Claims Initial Distribution.

**Waterfall** means the distribution of Post-Effective Date Available Cash, Surplus Reserved Cash, and Surplus Senior Claims Recovery Pool Cash, (i) first, to fund any deficits in the Wind Down Reserve, as determined in the sole discretion of the Liquidating Agent, (ii) second, to fund any deficits in the Senior Claims Recovery Pool, as determined in the sole discretion of the Liquidating Agent, (iii) third, to fund the Unsecured Claims Subsequent Distribution and Oaktree Additional Recovery Amount until all Oaktree Secured Claims are paid in full, (iv) fourth, to fund the Unsecured Claims Subsequent Distribution until payment in full of Allowed General Unsecured Claims, (v) fifth, to fund any Allowed DIP Claims not otherwise paid pursuant to Section 2.4 of this Plan until payment in full of the Allowed DIP Claims, and (v) sixth to Existing DRF Logistics Equity Interests in accordance with the Amended and Restated LLC Agreement.

**Wind Down** means, following the Effective Date, the process to (i) sell, abandon, wind down, dissolve, liquidate, or distribute any remaining assets of the Debtors' Estates and (ii) resolve, terminate, or wind down any remaining liabilities of the Estates, in each case in accordance with the Plan.

**Wind Down Amount** means the amount of Cash and cash equivalents, to be determined by the Debtors subject to the review and consent of the DIP Lender, each acting in good faith, to fund the Wind Down Budget until the Wind Down Completion Date, taking into account expected Post-Effective Date Available Cash.

**Wind Down Budget** means a budget setting forth the estimate of costs and expenses necessary to effectuate the Wind Down through the Wind Down Completion Date, including Wind Down Expenses, which budget (i) shall be prepared by the Debtors subject to the review and consent of the DIP Lender, each acting in good faith, and (ii) after the Effective Date, may be amended, modified, or supplemented from time to time by the Liquidating Agent in its reasonable discretion.

**Wind Down Completion Date** means the date upon which all assets of the Wind Down Estates have been sold, abandoned, dissolved, liquidated, or otherwise disposed of, and all proceeds thereof or remaining assets of the Wind Down Estates have been distributed in accordance with the Plan.

**Wind Down Estates** means, the Debtors, or any successor thereto, by merger, consolidation or otherwise to Wind Down, dissolve, and liquidate the Estates or otherwise administer or distribute the proceeds of, any remaining assets in accordance with this Plan.

**Wind Down Expenses** means costs and expenses reasonably necessary to effectuate the Wind Down.

**Wind Down Reserve** means, the Cash reserve established on the Effective Date pursuant to this Plan, consisting of the Wind Down Amount.

### 1.2     *Interpretation; Application of Definitions; Rules of Construction.*

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in or exhibit to this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in this Plan," "of this Plan," "to this Plan," and "under this Plan," respectively. The words "includes" and "including" are not limiting. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (iv) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (v) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

### 1.3     *Reference to Monetary Figures.*

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### 1.4     *Controlling Document.*

In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each. If there is any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

### 1.5     *Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of (i) the parties to the RSA as set forth in the RSA and (ii) the DIP Lender as set forth in the DIP Note Documents with respect to the form and substance of any of the Definitive Documents, including any amendments, restatements, supplements, or

other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in <u>Section 1.1</u> of this Plan) and fully enforceable as if stated in full herein.

**ARTICLE II.**      **ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, PRIORITY TAX CLAIMS, DIP CLAIMS, AND RESTRUCTURING EXPENSES.**

   2.1   *<u>Treatment of Administrative Expense Claims</u>.*

        On, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors or Liquidating Agent agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than Fee Claims) shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, (i) Cash in an amount equal to the Allowed amount of such Claim from the Senior Claims Recovery Pool or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid by the Debtors or the Liquidating Agent, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.

        Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court, or as provided by <u>Section 2.1</u> hereof, requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtors no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

        Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.

   2.2   *<u>Treatment of Fee Claims</u>.*

        (a)      All Professionals seeking approval by the Bankruptcy Court of Fee Claims shall (i) file, on or before the date that is forty-five (45) calendar days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Fee Claim.  The Liquidating Agent is authorized to pay compensation for

Professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

(b)     As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Fee Escrow Account. The Debtors shall fund the Fee Escrow Account with Cash equal to each Professional's good faith estimate of its respective unpaid Fee Claims, which estimate shall be provided to the Debtors at least five (5) calendar days prior to the Confirmation Date. The Debtors shall separately escrow such estimated amounts in the Fee Escrow Account (less any retainers) for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties. If a holder of a Fee Claim does not provide an estimate, the Debtors may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim. Funds held in the Fee Escrow Account shall not be deemed to be property of the Estates or property of the Wind Down Estates, but shall revert to the Wind Down Estates only after all Allowed Fee Claims have been irrevocably paid in full. The Fee Escrow Account shall be held in trust for Professionals and for no other parties until all Allowed Fee Claims have been paid in full. Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) on or as soon as reasonably practicable after the date upon which a Final Order relating to any such Allowed Fee Claim is entered, (ii) on such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Liquidating Agent, as applicable, or (iii) in accordance with any order of the Bankruptcy Court. The Liquidating Agent's obligations with respect to Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of Allowed Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with <u>Section 2.1</u> of this Plan. When such Allowed Fee Claims have been paid in full, any remaining amount in the Fee Escrow Account shall be promptly returned to the Wind Down Estates without any further action or order of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Fee Escrow Account in any way, other than the customary liens in favor of the depository bank at which the Fee Escrow Account is maintained.

(c)     Any objections to Fee Claims shall be served and filed (i) no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement or (ii) such later date ordered by the Bankruptcy Court.

### 2.3     *Treatment of Priority Tax Claims.*

On, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first Business Day that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, except to the extent that a holder of an Allowed Priority Tax Claim and the Debtors (with the consent of the Requisite Prepetition Secured Parties) agree to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim, at the sole option of the Debtors or the Liquidating Agent, as applicable, either (i) payment in full in Cash or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

**2.4**    ***Treatment of DIP Claims.***

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to the aggregate amount of the DIP Obligations, including (a) the principal amount outstanding under the DIP Loans on such date, (b) all interest accrued and unpaid thereon through and including the date of payment, and (c) all accrued and unpaid fees, discounts, expenses, costs and indemnification obligations payable under the DIP Note Documents.  On or as soon as reasonably practicable after the Effective Date, each holder of an Allowed DIP Claim shall receive, on account of such holder's Allowed DIP Claim, a Pro Rata distribution of Cash from the DIP Claims Recovery Pool in an amount not to exceed the amount of such holder's Allowed DIP Claim.  After the recovery in full by all Holders of Allowed General Unsecured Claims in Class 4, any amount of Allowed DIP Claims not paid on the Effective Date shall be paid from any remaining available Cash, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed DIP Claim.  For the avoidance of doubt, all DIP Claims shall be discharged upon the Wind Down Completion Date distribution regardless of whether the Allowed DIP Claim has been paid in full in Cash.  Notwithstanding anything to the contrary in this Plan or the Confirmation Order, the provisions of the DIP Note Documents that expressly survive termination or maturity of the DIP Note shall continue in full force and effect after the Effective Date in accordance with the terms thereof.

## ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.

**3.1**    ***Classification in General.***

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided* that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

**3.2**    ***Summary of Classification of Claims and Interests.***

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (a) Impaired and Unimpaired under this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject this Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, Priority Tax Claims, and DIP Claims have not been classified.

(a)    **Claims and Interests in DRF Logistics, LLC**

| **Class** | **Type of Claim or Interest** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1A | Other Priority Claims | Unimpaired | No (Presumed to accept) |
| Class 2A | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| Class 3A | Oaktree Secured Claims | Impaired | Yes |

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 4A | General Unsecured Claims[2] | Impaired | Yes |
| Class 5A | Interdebtor Claims | Unimpaired | No (Presumed to accept) |
| Class 6A | Existing DRF Logistics Equity Interests | Impaired | Yes |

(b)    **Claims and Interests in DRF, LLC**

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1B | Other Priority Claims | Unimpaired | No (Presumed to accept) |
| Class 2B | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| Class 3B | Oaktree Secured Claims | Impaired | Yes |
| Class 4B | General Unsecured Claims[3] | Impaired | Yes |
| Class 5B | Interdebtor Claims | Unimpaired | No (Presumed to accept) |
| Class 6B | Interdebtor Interests | Unimpaired | No (Presumed to accept) |

### 3.3    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors or the Liquidating Agent, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.4    *Elimination of Vacant Classes.*

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### 3.5    *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

With respect to each Debtor, if a Class contained Claims or Interests eligible to vote and no holder of such Claims or Interests, as applicable, votes to accept or reject this Plan, this Plan shall be presumed accepted by the holders of such Claims or Interests, as applicable, in such Class.

---

[2] The Debtors are still in the process of analyzing all General Unsecured Claims to determine whether such Claims should be split into separate Classes.

[3] The Debtors are still in the process of analyzing all General Unsecured Claims to determine whether such Claims should be split into separate Classes.

3.6     *__Voting; Presumptions; Solicitation__*.

(a)     **Acceptance by Certain Impaired Classes**.  Only holders of Claims and Interests in Class 3, Class 4, and Class 6A are entitled to vote to accept or reject this Plan.  An Impaired Class of Claims or Interests shall have accepted this Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims or Interests actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims or Interests actually voting in such Class have voted to accept this Plan.

(b)     **Deemed Acceptance by Unimpaired Classes**.  Holders of Claims and Interests in Class 1, Class 2, Class 5, and Class 6B are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

3.7     *__Cramdown__*.

If any Class entitled to vote on this Plan does not vote to accept this Plan, the Debtors may (a) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

3.8     *__No Waiver__*.

Nothing contained in this Plan shall be construed to waive a Debtor's or other Entity's right to object on any basis to any Claim.

**ARTICLE IV.        TREATMENT OF CLAIMS AND INTERESTS.**

4.1     *__Class 1:  Other Priority Claims__*.

(a)     **Treatment**:  On or as soon as reasonably practicable after the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Priority Claim becomes an Allowed Claim, except to the extent that a holder of an Allowed Other Priority Claim and the Debtors or Liquidating Agent (as applicable) agree to less favorable treatment, each holder of an Allowed Other Priority Claim shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, at the option of the Debtors or Liquidating Agent (as applicable), either (i) payment in full in Cash or (ii) other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(b)     **Impairment and Voting**:  Allowed Other Priority Claims are Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Other Priority Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to such Allowed Other Priority Claims.

17

### 4.2    *Class 2:  Other Secured Claims.*

(a)    **Treatment**:  On or as soon as reasonably practicable after the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Secured Claim becomes an Allowed Claim, except to the extent that a holder of an Allowed Other Secured Claim and the Debtors (in consultation with and subject to the consent of the DIP Lender) or Liquidating Agent (as applicable) agree to less favorable treatment, each holder of an Allowed Other Secured Claim shall receive in full and final satisfaction, settlement, release, and discharge of such Claim, at the option of the Debtors or Liquidating Agent (as applicable), either (i) payment in full in Cash, or (ii) other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(b)    **Impairment and Voting**:  Allowed Other Secured Claims are Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to such Allowed Other Secured Claims.

### 4.3    *Class 3:  Oaktree Secured Claims*

(a)    **Treatment**:  In accordance with <u>ARTICLE VII</u> of this Plan, each holder of an Allowed Oaktree Secured Claim shall receive from the Debtors or Liquidating Agent (as applicable), in full and final satisfaction, settlement, release, and discharge of such Allowed Oaktree Secured Claim, such holder's Pro Rata share of the (i) Oaktree Initial Payment and (ii) Oaktree Additional Recovery Amount.  For the avoidance of doubt, the satisfaction, settlement, release, and discharge of such Allowed Oaktree Secured Claim shall in no way, directly or indirectly, affect (i) a holder's Claim, rights, remedies or interests under the Note Purchase Agreement or the Note Purchase Documents, (ii) the legality, validity, binding nature and non-avoidability of Pitney Bowes' or any guarantors' obligations under the Note Purchase Agreement or the Note Purchase Documents, or (iii) the validity, enforceability or perfection of the security interests securing the obligations under the Note Purchase Agreement or the Note Purchase Documents.

(b)    **Impairment and Voting**:  Allowed Oaktree Secured Claims are Impaired. Holders of Allowed Oaktree Secured Claims are entitled to vote on this Plan.

### 4.4    *Class 4:  General Unsecured Claims.*

(a)    **Treatment**:  In accordance with the distribution mechanics described in <u>ARTICLE VII</u> of this Plan each holder of an Allowed General Unsecured Claim shall receive, from the Debtors or Liquidating Agent (as applicable), in full and final satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, such holder's Pro Rata share of (i) Unsecured Claims Initial Distribution; *provided that*, for the purposes of this clause (i), the PB Unsecured Claim shall not participate in or receive any recovery from the Unsecured Claims Initial Distribution, plus (ii) the Unsecured Claims Subsequent Distribution with such distribution(s) pursuant to this clause (ii) made in accordance with the Debtor Distribution Ratio.

(b)    **Impairment and Voting**:  Allowed General Unsecured Claims are Impaired.  Holders of Allowed General Unsecured Claims are entitled to vote on this Plan.

**4.5**     *Class 5:  Interdebtor Claims.*

(a)     **Treatment**:  On or as soon as practicable after the Effective Date, all Interdebtor Claims shall be adjusted, Reinstated, or discharged (each without any distribution) to the extent reasonably determined to be appropriate by the Debtors or Liquidating Agent (as applicable).

(b)     **Impairment and Voting**: Allowed Interdebtor Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Interdebtor Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to such Allowed Interdebtor Claims.

**4.6**     *Class 6A:  Existing DRF Logistics Equity Interests.*

(a)     **Treatment:**  In accordance with the *Amended and Restated Limited Liability Company Agreement* of DRF Logistics, LLC, each holder of an Allowed Existing DRF Logistics Equity Interest as of the Effective Date shall be entitled to receive, from the Debtors or Liquidating Agent (as applicable) any remaining Cash from DRF Logistics, LLC's Estate or Wind Down Estate (as applicable) following the satisfaction in full in accordance with the Bankruptcy Code and the Plan of all (i) Allowed General Unsecured Claims, (ii) Allowed Oaktree Secured Claims, and (iii) Allowed DIP Claims against DRF Logistics, LLC.  For the avoidance of doubt, the Existing DRF Logistics Equity Interests shall remain in existence until the day following the Wind Down Completion Date, at which time such interests shall be automatically extinguished.

(b)     **Impairment and Voting**:  Allowed Existing DRF Logistics Equity Interests are Impaired.  Holders of Allowed Existing DRF Logistics Equity Interests are entitled to vote on this Plan.

**4.7**     *Class 6B:  Interdebtor Interests.*

(a)     **Treatment**:  On the Effective Date  and without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, member, manager, management, or Security holders of any Debtor or Wind Down Estate, (as applicable) all Interdebtor Interests shall be unaffected by the Plan and continue in place following the Effective Date, solely for the administrative convenience of maintaining the existing corporate structure of the Debtors.

(b)     **Impairment and Voting**: Allowed Interdebtor Interests are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Interdebtor Interests are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to such Allowed Interdebtor Interests.

**ARTICLE V.        MEANS FOR IMPLEMENTATION.**

      5.1    *Sources of Consideration for Plan Distribution.*

      The Debtors and Liquidating Agent shall fund Cash distributions under this Plan with Cash proceeds available from:  (i) Cash available on or after the Effective Date in accordance with the Plan, including the PB Settlement Amount, and (ii) any additional proceeds of the Wind Down, if any.

      5.2    *Liquidating Agent*

      (a)    <u>Appointment</u>.  Hilco shall serve as Liquidating Agent for each of the Debtors and the Wind Down Estates.

      (b)    <u>Authority</u>.  Subject to <u>ARTICLES X</u> and <u>XI</u> of this Plan, the Liquidating Agent shall have the authority and right on behalf of each of the Debtors and the Wind Down Estates, without the need for Bankruptcy Court approval (unless otherwise expressly indicated), to carry out and implement all provisions of this Plan, including, to:

      (i)    except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any and all Claims;

      (ii)    make distributions to holders of Allowed Claims in accordance with this Plan;

      (iii)    withhold from the amount distributable to any Entity the maximum amount needed to pay any tax or other charge that the Liquidating Agent has determined may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

      (iv)    exercise its business judgment to direct and control the Wind Down, liquidation, sale and/or abandonment of the remaining Assets of the Debtors under this Plan and in accordance with applicable law as necessary to maximize distributions to holders of Allowed Claims;

      (v)    prosecute any Causes of Action on behalf of the Debtors or Wind Down Estates (as applicable), elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Liquidating Agent may determine is in the best interests of the Debtors or Wind Down Estates (as applicable);

      (vi)    make payments to existing Professionals that continue to perform after the Effective Date;

(vii)   protect and enforce the rights to the assets of the Wind Down Estates (including any Causes of Action) vested in the Wind Down Estates and the Liquidating Agent by any method deemed appropriate, including by judicial proceedings or otherwise;

(viii)  open and maintain bank accounts on behalf of or in the name of the Wind Down Estates;

(ix)    purchase and carry all insurance policies that the Liquidating Agent deems reasonably necessary or advisable to pay all associated insurance premiums and costs;

(x)     maintain the books and records and accounts of the Debtors or Wind Down Estates and obtain any necessary insurance;

(xi)    invest Cash of the Debtors or Wind Down Estates, as available, and any income earned thereon;

(xii)   prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Liquidating Agent as described herein;

(xiii)  investigate any Assets of the Wind Down Estates, and any other potential Causes of Action;

(xiv)   marshal, market for sale, and wind down any of the remaining Assets of the Wind Down Estate;

(xv)    acquire litigation and other claims related to the Debtors, and prosecuting such claims;

(xvi)   develop and use creditor communication procedures, including a creditor portal (if necessary);

(xvii)  review and compel turnover of the property of the Debtors or the Wind Down Estates;

(xviii) pursuant to any investigation related to a Cause of Action, seek the examination of any person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(xix)   incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of Professionals retained by the Liquidating Agent;

(xx)    administer each Debtor's tax obligations, including (A) filing tax returns and paying tax obligations, (B) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its

Estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (C) representing the interest and account of each Debtor or its Estate before any taxing authority in all matters including any action, suit, proceeding or audit;

(xxi) prepare and file any and all informational returns, reports, statements, returns, or disclosures relating to the Debtors or Wind Down Estates that are required hereunder, by any Governmental Unit or applicable law;

(xxii) amend, modify, or supplement the Wind Down Budget;

(xxiii) determine, from time to time, whether the amounts available in the Wind Down Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established and amend, modify, or supplement the Wind Down Budget accordingly. If the Liquidating Agent determines that a surplus exists in the Wind Down Reserve as of the date of such determination, the Liquidating Agent may allocate such Surplus Reserved Cash pursuant to the Waterfall;

(xxiv) determine, from time to time, whether the amounts available in the Senior Claims Recovery Pool are in excess of the amount necessary to pay holders of Allowed Senior Claims, plus any such Disputed Claims until final Allowance or Disallowance. If the Liquidating Agent determines that a surplus exists in the Senior Claims Recovery Pool as of the date of such determination, the Liquidating Agent may allocate the Surplus Senior Claims Recovery Pool Cash pursuant to the Waterfall;

(xxv) enter into any agreement or execute any document or instrument required by or consistent with the Plan or the Confirmation Order and to perform all obligations thereunder;

(xxvi) close the Chapter 11 Cases;

(xxvii) pay Statutory Fees on behalf of the Debtors or Wind Down Estates in accordance with Section 13.1 of this Plan; and

(xxviii) perform other duties and functions that are consistent with the implementation of this Plan.

For the avoidance of doubt, and notwithstanding anything in the foregoing, the Liquidating Agent's pursuit in respect of any Claim or Cause of Action shall be subject in all respects to ARTICLE XI of this Plan, and no Releasing Party may pursue any Claim or Cause of Action against any Released Party.

(c)      Indemnification.  Each of the Debtors shall indemnify and hold harmless Hilco and its advisors and attorneys, and any of its directors, officers, and employees, solely in its capacity as the Liquidating Agent for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidating Agent's fraud, gross negligence, willful misconduct, or criminal conduct.

### 5.3      *Implementation.*

(i)      Prior to the Effective Date, the Debtors shall use commercially reasonable efforts to sell their interests in all of their Assets.

(ii)      On the Effective Date, PBI shall fund the PB Settlement Amount and Oaktree shall receive the Oaktree Initial Funding Amount;

(iii)      On the Effective Date, the Wind Down Estates shall be established pursuant to the Plan.

(iv)      On the Effective Date, the Senior Claims Recovery Pool shall be established and funded pursuant to the Plan.

(v)      On the Effective Date, DIP Claims shall be paid from the DIP Claims Recovery Pool.

(vi)      On or prior to the Effective Date, the Fee Escrow Account shall be established and funded with an amount of Cash sufficient to pay Fee Claims, based upon estimates provided by the Professionals, as set forth in Section 2.2 of this Plan.

(vii)      On the Effective Date, the Wind Down Estates shall be funded in accordance with the Wind Down Budget for the Wind Down process and be funded with the Wind Down Amount.  An initial Wind Down Budget shall be filed with the Plan Supplement and may be amended, modified, or supplemented from time to time by the Liquidating Agent.

(viii)      On the Effective Date, any remaining assets and, subject to ARTICLE XI of this Plan any Causes of Action of the Debtors' Estates shall transfer to the Wind Down Estates automatically and without further action of the Bankruptcy Court.

(ix)      In accordance with Section 5.2 of this Plan, the Liquidating Agent may allocate Surplus Reserved Cash pursuant to the Waterfall.

(x)      In accordance with Section 5.2 of this Plan, the Liquidating Agent may allocate Surplus Senior Claims Recovery Pool Cash pursuant to the Waterfall.

(xi)      At the conclusion of the Wind Down (or sooner as reasonably determined by the Liquidating Agent), any residual amounts remaining

in the Wind Down Estates shall be distributed to holders of Allowed Claims and Interests in accordance with the Waterfall.

**5.4**     *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to section 363 and 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, this Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that a holder of a Claim or Interest may have with respect to any Claim or Interest and any distribution to be made on account of such Claim or Interest. This Plan shall be deemed a motion to approve the compromises and settlements contained in this Plan. Entry of the Confirmation Order, as of the Effective Date, shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of this Plan.

**5.5**     *Limited Liability Company Action.*

(a)     Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Liquidating Agent) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in this Plan involving the organizational structure of the Debtors, and any other action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

(b)     The authorizations and approvals contemplated by this Section 5.5 shall be effective notwithstanding any requirements under non-bankruptcy law.

(c)     The Confirmation Order shall and shall be deemed, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, to authorize and direct parties, as applicable, among other things, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan.

**5.6**     *Cancellation of Existing Securities and Agreements.*

(a)     On the Effective Date and without the need for any further organizational action or approval of any board of directors, board of managers, member, manager, management, or Security holders of any Debtor, the certificates and all other documents representing the Interdebtor Interests shall be deemed to be in full force and effect.

(b)     Following the Wind Down Completion Date, all Existing DRF Logistics Equity Interests shall automatically be extinguished in accordance with Section 4.6 of this Plan.

### 5.7    *Settlement and Release Agreement.*

Pursuant to sections 363, 365, and 1123(b)(2) of the Bankruptcy Code (as applicable) and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to this Plan, and the releases contained in this Plan and in the Settlement and Release Agreement, the provisions of the Plan shall constitute a good faith compromise of Claims, Causes of Action, Interests, and controversies relating to the contractual, legal, equitable, and other rights that any Debtor or its Estate may have with respect to any Claim or Cause of Action against Pitney Bowes and its Related Persons, and any contractual, legal, equitable, and other rights that Pitney Bowes may have with respect to any Claim or Cause of Action against the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of (i) the Settlement and Release Agreement (including its assumption) and (ii) the compromise or settlement of all such Claims, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such settlement and the releases contained therein and herein, are in the best interests of the Debtors, their Estates, the Wind Down Estates and holders of all Claims, Causes of Action, and Interests, and is fair, equitable, and reasonable.  The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of this Plan.

### 5.8    *Merger or Dissolution of Debtors*

On the Effective Date, either (i) any remaining Assets or Causes of Action (subject in all respects to <u>ARTICLE XI</u> of the Plan) of the Debtors shall vest in the Wind Down Estates or (ii) the Debtors shall be merged together into DRF Logistics, LLC, which shall thereafter be liquidated, wound down, and terminated in accordance with <u>Section 5.11</u> of this Plan.  In the event of a merger, (a) the Debtors may effectuate the merger without the necessity for any other or further actions to be taken by or on behalf of such merged Debtor or its equity holders or any payments to be made in connection therewith, other than the filing of a certificate of merger with the appropriate governmental authorities; (b) all Claims filed or scheduled in DRF, LLC's case shall be deemed to have been filed in DRF Logistics, LLC's case; (c) DRF Logistics, LLC may change its name and DRF Logistics, LLC's Chapter 11 Case may be renamed accordingly; and (d) the Chapter 11 Case of DRF, LLC shall be closed.  At the discretion of the Liquidating Agent, after the Effective Date, DRF Logistics, LLC may engage in any other transaction in furtherance of this Plan.  Any such transactions may be effective after the Effective Date pursuant to the Confirmation Order without any further action by the equity holders, members, managers, general or limited partners, or directors of any of the Debtors.

### 5.9    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Liquidating Agent is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan

5.10    *__Wind Down__.*

After the Effective Date, pursuant to this Plan, the Liquidating Agent shall, in an expeditious but orderly manner, wind down, sell, and otherwise liquidate and convert to Cash the remaining Assets of the Debtors, with no objective to continue or conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidation and orderly wind down of the Debtors and shall not unduly prolong the duration of the liquidation and the wind down. Upon the completion of the liquidation and wind down of the Debtors, the Liquidating Agent shall be authorized to file a certificate of cancellation with the appropriate governmental authorities terminating the legal existence of DRF Logistics, LLC and take such other actions consistent therewith to effect the termination of the legal existence of DRF Logistics, LLC.

5.11    *__Closing of the Chapter 11 Cases__*

When all Disputed Claims have become Allowed Claims or have been disallowed by Final Order, all Assets have been liquidated into Cash or abandoned, and all remaining available Cash has been distributed in accordance with this Plan and the Chapter 11 Cases have been fully administered, the Liquidating Agent shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.12    *__Certain Tax Matters__*

Each holder of an Existing DRF Logistics Equity Interest shall, and shall cause its Affiliates to, not take any action that would (or refrain from taking any action the failure of which would) cause or be reasonably likely to cause the Debtors to cease to be treated as entities disregarded as separate from their owner for U.S. federal, state and local income tax purposes including, but not limited to, (i) making, changing, or revoking an entity classification election for the Debtors that would cause them to be treated as an association taxable as a corporation for U.S. federal income tax purposes pursuant to Treasury Regulations sections 301.7701-2(b) and 301.7701-3(c) (or similar applicable state or local law); (ii) converting the Debtors to an entity treated as an association taxable as a corporation for U.S. federal, state and local income tax purposes; or (iii) engaging in any other transaction that, if implemented, would prevent, alter, or in any way adversely impact the Debtors' classification as entities that are disregarded as separate from their owner for U.S. federal, state and local income tax purposes.

**ARTICLE VI.    GOVERNANCE**

6.1    *__Board of Managers and Officers.__*

The Liquidating Agent, on behalf of the Debtors, may appoint a manager of DRF Logistics, LLC to serve after the Effective Date, with the identity of such manager to be disclosed in the Plan Supplement. The Liquidating Agent, on behalf of the Debtors, may elect such additional manager(s) and/or officer(s) of DRF Logistics, LLC as the Liquidating Agent deems necessary to implement this Plan and the actions contemplated herein. The Liquidating Agent, on behalf of the Debtors, shall also have the power to act by written consent to remove any manager or officer of DRF Logistics, LLC at any time with or without cause.

### 6.2 *Governing Documents.*

As of the Effective Date, the governing documents of DRF Logistics, LLC shall be amended to the extent necessary to carry out the provisions of this Plan. All amended and necessary organizational documents of DRF Logistics, LLC shall be contained in the Plan Supplement.

## ARTICLE VII.   DISTRIBUTIONS.

### 7.1 *Distributions Generally.*

The Debtors or Liquidating Agent (as applicable) shall make all Plan Distributions to holders of Allowed Claims in accordance with the terms of this Plan.

### 7.2 *No Postpetition Interest on Claims.*

Unless otherwise provided in this Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claim and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim. For the avoidance of doubt, this Section 7.2 shall not apply to DIP Claims.

### 7.3 *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims or Interests in each Class, as maintained by the Debtors or their agents, shall be deemed closed, and there shall be no further changes in the record holders of any Claims or Interests after the Distribution Record Date. Neither the Debtors nor the Liquidating Agent shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Liquidating Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 7.4 *Distributions on the Effective Date or as Soon as Reasonably Practicable Thereafter.*

The Liquidating Agent shall make distributions, as applicable, on the Effective Date or as soon as reasonably practicable thereafter, in accordance with the Plan:

(a)     of Cash in the Senior Claims Recovery Pool to holders of Senior Claims, each to the extent Allowed as of the Effective Date;

(b)     of Cash in the Fee Escrow to holders of Fee Claims in accordance with Section 2.2 of this Plan;

(c)     of Cash in the DIP Claims Recovery Pool to holders of Allowed DIP Claims, to the extent there are funds in the DIP Claims Recovery Pool;

(d)     of the Oaktree Initial Payment Amount, funded by the PB Settlement Amount, and the Oaktree Additional Recovery Amount (if any) to holders of Allowed Oaktree Secured Claims;

(e)     of the Unsecured Claims Initial Distribution, funded by the PB Settlement Amount, and the Unsecured Claims Subsequent Distribution (if any) to holders of Allowed General Unsecured Claims to the extent Allowed as of the Effective Date;

(f)     of any remaining Cash following payment in full of all Allowed General Unsecured Claims (and subject to appropriate reserves) to holders of Allowed Existing DRF Logistics Equity Interests.

### 7.5     *Periodic Distributions of the Senior Claims Recovery Pool and Unsecured Claims Subsequent Distribution*

The Liquidating Agent shall make periodic distributions, in the frequency determined by the Liquidating Agent in its sole discretion, as applicable:

(a)     of Cash in the Senior Claims Recovery Pool to holders of Senior Claims, each to the extent Allowed after the Effective Date;

(b)     of the Oaktree Additional Recovery Amount to holders of Allowed Oaktree Secured Claims;

(c)     of the Unsecured Claims Subsequent Distribution to holders of Allowed General Unsecured Claims (as applicable), including Disputed General Unsecured Claims that become Allowed General Unsecured Claims, in accordance with the Plan; and

(d)     of any remaining Cash following payment in full of all Allowed General Unsecured Claims (and subject to appropriate reserves) to holders of Allowed Existing DRF Logistics Equity Interests.

### 7.6     *Date of Distributions.*

(a)     In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(b)     Prior to any distributions by the Liquidating Agent of any Surplus Senior Claims Recovery Pool Cash pursuant to the Waterfall, the Liquidating Agent shall make distributions to holders of all Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims until such Allowed Claims are indefeasibly paid in full.

28

(c)     After the resolution of a Disputed Senior Claim, the Liquidating Agent shall treat any amounts that were reserved on account of such Disputed Senior Claim that is either (i) Disallowed or (ii) Allowed in a lesser amount than asserted, as Surplus Senior Claims Recovery Pool Cash and such amounts shall be allocated pursuant to the Waterfall.

### 7.7   *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 7.8   *Plan Distributions Made by Liquidating Agent.*

All Plan Distributions shall be made by the Liquidating Agent on and after the Effective Date as provided herein.  The Liquidating Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Debtors shall use commercially reasonable efforts to provide the Liquidating Agent with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtors' books and records. The Debtors shall cooperate in good faith with the applicable Liquidating Agent to comply with the withholding and reporting requirements outlined in Section 7.18 of this Plan.

### 7.9   *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, the Liquidating Agent shall make all distributions to any holder of an Allowed Claim or its authorized designee or transferee as and when required by this Plan at (a) the address of such holder on the books and records of the Debtors or their agents, (b) at the address in any written notice of address change delivered to the Debtors or the Liquidating Agent, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001, or (c) the address of the designee of such holder to the extent practicable. Subject to Section 7.10 of this Plan, in the event that any distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Liquidating Agent has been notified of the then-current address of such holder, at which time or as soon thereafter as reasonably practicable, such distribution shall be made to such holder without interest.

### 7.10   *Unclaimed Property.*

(a)     One year from the later of:  (i) the Effective Date and (ii) the date that is ten (10) Business Days after the date a Claim or Interest is first Allowed, all distributions payable on account of such Claim or Interest that are not claimed or accepted by such date shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Liquidating Agent or its successor or assigns, and all claims of any other Entity (including the holder of a Claim in the same Class) to such distribution shall be discharged and forever barred. The Liquidating Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

(b)     A distribution shall be deemed unclaimed if a holder has not (i) accepted a particular distribution or, in the case of distribution made by check, by ninety (90) calendar days

after issuance, negotiated such check, (ii) given notice to the Liquidating Agent of an intent to accept a particular distribution, (iii) responded to the Debtors' or Liquidating Agent's, as applicable, request for information necessary to facilitate a particular distribution, or (iv) taken any other action necessary to facilitate such distribution.

### 7.11    *Satisfaction of Claims.*

Unless otherwise provided in this Plan, any distributions and deliveries to be made on account of Allowed Claims under this Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims and shall not exceed the amount of such Allowed Claims.

### 7.12    *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Debtors or the Liquidating Agent, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors or Liquidating Agent, as applicable.

### 7.13    *Minimum Distribution.*

The Liquidating Agent shall have no obligation to make a distribution that is less than $100.00 in Cash.

### 7.14    *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary in this Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

### 7.15    *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in this Plan or as otherwise required by law (as determined by the Debtors or Liquidating Agent), distributions with respect to an Allowed Claim shall be allocated first to the principal amount of such Allowed Claim (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of such Allowed Claim, to any portion of such Allowed Claim for accrued but unpaid interest.

### 7.16    *Setoffs and Recoupments.*

Except as otherwise provided in this Plan, including in all respects <u>Sections 11.6(a)</u>, <u>11.6(b)</u>, <u>11.7</u>, and <u>11.8</u>, each Debtor or the Liquidating Agent on behalf such Debtor, may, pursuant to applicable nonbankruptcy law, set off or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that such Debtor or Wind Down Estate or its successors may hold against the holder of such Allowed Claim after the Effective Date. Notwithstanding the foregoing, neither the failure to effect a setoff or recoupment nor the allowance of any Claim

hereunder shall constitute a waiver or release by a Debtor or Wind Down Estate or its successor of any claims, rights, or Causes of Action that a Debtor or Wind Down Estate or its successor or assign may possess against the holder of such Claim, except as otherwise provided in this Plan, including in all respects <u>Sections 11.6(a)</u>, <u>11.6(b)</u>, <u>11.7</u>, and <u>11.8</u>.

### 7.17   *Expenses of Liquidating Agent.*

Subject to the written agreement of the Debtors and the Liquidating Agent, the amount of any reasonable and documented out-of-pocket fees and expenses incurred by the Liquidating Agent on or after the Effective Date (including taxes other than any income, franchise, capital gain, or similar taxes) and any reasonable and documented compensation and out-of-pocket expense reimbursement Claims (including for reasonable and documented outside attorneys' fees and other professional fees and out-of-pocket expenses) made by the Liquidating Agent shall be paid in Cash by the Liquidating Agent in the ordinary course of business.

### 7.18   *Withholding and Reporting Requirements.*

(a)     *Withholding Rights*.  In connection with this Plan, any Entity issuing any instrument or making any distribution or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to this Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any Entity issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.

(b)     *Forms*.  Any party entitled to receive any property as an issuance or distribution under this Plan shall, upon reasonable request, deliver to the applicable withholding agent or such other Entity or Estate designated by the Liquidating Agent, an appropriate IRS Form W-9 or (if the payee is a foreign person) IRS Form W-8 and/or any other forms or documents, as applicable, requested by the Liquidating Agent or the applicable withholding agent to reduce or eliminate any required federal, state, or local withholding.  If such request is made by a withholding agent or such other Entity or Estate designated by the Liquidating Agent and the party entitled to receive such property as an issuance or distribution fails to comply with any such request within ninety (90) days after the request is made, the amount of such issuance or distribution shall irrevocably revert to the Entity or Estate, as applicable, and any Claim in respect of such

distribution under this Plan shall be discharged and forever barred from assertion against any Debtor, Wind Down Estate and their respective property.

## ARTICLE VIII.  PROCEDURES FOR RESOLVING CLAIMS.

### 8.1  *Allowance of Claims.*

After the Effective Date, the Debtors and the Liquidating Agent (as applicable) shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order in the Chapter 11 Cases allowing such Claim.

### 8.2  *Objections to Claims.*

As of the Effective Date, objections to Claims against the Debtors may be interposed and prosecuted only by the Liquidating Agent.  Any objections to Claims shall be served and filed (i) on or before the ninetieth (90th) day following the later of (a) the Effective Date and (b) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtors or the Liquidating Agent, as applicable.

### 8.3  *Estimation of Claims.*

The Debtors or Liquidating Agent, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors had previously objected to or otherwise disputed such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Agent may pursue supplementary proceedings to object to the allowance of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) calendar days after the date on which such Claim is estimated.

### 8.4  *Resolution of Claims.*

All of the objection, estimation, and resolution procedures in this Plan are intended to be cumulative and not exclusive of one another.  Except as otherwise provided in this Plan, the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or

32

document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator, subject to the written consent of the Administrative Agent, shall retain and may enforce, sue on, settle, resolve, withdraw, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court.   The Liquidating Agent or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

### 8.5    *Claim Resolution Procedures Cumulative.*

All of the objection, estimation, and resolution procedures in this Plan are intended to be cumulative and not exclusive of one another.   Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with this Plan without further notice or Bankruptcy Court approval.

### 8.6    *Adjustment to Claims Register Without Objection.*

Any Claim or Interest that (a) is a duplicate, (b) has been paid or satisfied, or (c) has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidating Agent, as applicable, upon agreement between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.7    *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under this Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 8.8    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.   On a date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Liquidating Agent in the Liquidating Agent's sole discretion, the Liquidating Agent shall provide to the holder of such Claim the Distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required by the Bankruptcy Code.

## ARTICLE IX.         EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 9.1    *Rejection of Executory Contracts and Unexpired Leases.*

(a)      As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are a party shall be deemed rejected except for an executory contract or unexpired lease that: (i) is specifically designated as a contract

or lease to be assumed by the Debtors pursuant to this Plan, including as set forth in the Plan Supplement; (ii) was previously assumed or rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court or assumed and assigned pursuant to pursuant to a Final Order of the Bankruptcy Court; (iii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iv) is the subject of a separate assumption or rejection motion filed by the Debtors on or before the Confirmation Date; or (v) is the subject of a pending Cure Dispute.

(b)      Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in this Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Debtors, the Liquidating Agent, or the assignee of such executory contract or unexpired lease (as applicable) have provided adequate assurance of future performance under such executory contract or unexpired lease. Each executory contract or unexpired lease assumed pursuant to this Plan shall vest in and be fully enforceable by the applicable Debtor in accordance with its terms, except as modified by the provisions of this Plan, any Final Order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(c)      Assumption of any executory contract or unexpired lease pursuant to this Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the Effective Date.

### 9.2      *Survival of the Debtors' Indemnification Obligations.*

Notwithstanding anything in this Plan, any and all obligations of the Debtors pursuant to corporate charters, bylaws, limited liability company agreements, other organizational documents, or other agreements to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees, based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation or consummation of this Plan and shall be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former officers, members, managers, directors, agents, or employees than the indemnification provision in place prior to the Effective Date. All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under this Plan.

### 9.3      *Determination of Cure Disputes and Deemed Consent.*

Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors or Liquidating Agent (as applicable) may otherwise agree.

The Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contacts.  At least fourteen (14) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned to the Wind Down Estates, reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or Wind Down Estate, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Wind Down Estate, as applicable.  Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this <u>Section 9.3</u>, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

If there is an Cure Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; provided, that the Debtors or the Wind Down Trust, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

To the extent an Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Cure; provided, that the Debtors or Wind Down Estates (as applicable) reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to the extent such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Debtor or Wind Down Estate (as applicable)).  The Debtors or Wind Down Estates (as applicable) may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims

against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired leases.

### 9.4    *Rejection Damages Claims.*

Unless an earlier date is otherwise provided for by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' executory contracts or unexpired leases pursuant to this Plan or otherwise, must be filed with Bankruptcy Court and served on the Claims Agent no later than twenty-one (21) days after the Confirmation Date**.**

Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of Claim were not timely filed as set forth in the paragraph above shall not (i) be treated as a creditor with respect to such Claim, or (ii) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an executory contract or unexpired lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, the Liquidating Agent, the Wind Down Estates, or the property for any of the foregoing without the need for any objection by the Liquidating Agent or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such contract or lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' prepetition executory contracts or unexpired leases shall be classified as General Unsecured Claims, except as otherwise provided by Final Order of the Bankruptcy Court.

### 9.5    *Insurance Policies.*

All insurance policies to which any Debtor is a beneficiary as of the Effective Date shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Debtor and shall continue in full force and effect thereafter in accordance with their respective terms and vest in the Debtors and the Wind Down Estates, as applicable.

### 9.6    *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned to the Wind Down Estates hereunder, if applicable, shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions

the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

      **9.7**      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

      Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

      **9.8**      *Reservation of Rights.*

      (a)      Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors, the Wind Down Estates or the Liquidating Agent or their respective Affiliates has any liability thereunder.

      (b)      Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors, the Wind Down Estates, or the Liquidating Agent under any executory or non-executory contract or unexpired or expired lease.

      (c)      Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Wind Down Estates, or the Liquidating Agent, as applicable, under any executory or non-executory contract or unexpired or expired lease.

      (d)      If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors, the Wind Down Estates, or Liquidating Agent, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE X.**      **CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND OCCURRENCE OF EFFECTIVE DATE.**

      **10.1**      *Conditions Precedent to Confirmation.*

      The Confirmation Date shall not occur unless the following conditions precedent to confirmation of this Plan have been satisfied:

(a) the Settlement and Release Agreement has been approved by the Bankruptcy Court pursuant to the in the Confirmation Order or other Final Order of the Bankruptcy Court;

(b) this Plan, the Plan Supplement, and any and all of the schedules, documents, and exhibits contained therein shall have been filed with the Bankruptcy Court and shall be consistent in all material respects with this Plan and the RSA; and

(c) the RSA shall not have been terminated and shall be in full force and effect.

**10.2** *__Conditions Precedent to Effective Date.__*

The Effective Date shall not occur unless all of the following conditions precedent have been satisfied:

(a) the RSA shall not have been terminated and shall be in full force and effect with no notice of termination, breach, default, event of default, or similar notice having been delivered by or to any signatory thereto (to the extent such breach, default, event of default, or similar notice has not been cured or waived in accordance with the terms of the RSA);

(b) the Bankruptcy Court shall have entered the Confirmation Order and such order shall not have been vacated, reversed, or stayed pending appeal;

(c) all actions, documents, and agreements necessary to implement and consummate this Plan, and the other transactions and other matters contemplated herein, shall have been effected or executed; and

(d) all authorizations, consents, regulatory or governmental approvals, rulings or documents, including Bankruptcy Court approval, necessary to effectuate and implement this Plan will have been obtained.

**10.3** *__Waiver of Conditions Precedent.__*

(a) Each of the conditions precedent to the occurrence of the Effective Date of the Plan set forth in this ARTICLE X may be waived, in whole or in part, with the reasonable written consent of the DIP Lender and, solely to the extent such waiver would directly or indirectly, affect (i) Oaktree's Claims, or rights, remedies or interests under the Note Purchase Agreement or the Note Purchase Documents, (ii) the legality, validity, binding nature and non-avoidability of Pitney Bowes' or any guarantors' obligations under the Note Purchase Agreement or the Note Purchase Documents, or (iii) the validity, enforceability or perfection of the security interests securing the obligations under the Note Purchase Agreement or the Note Purchase Documents, the reasonable consent of Oaktree, without leave of or order of the Bankruptcy Court.

(b) Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.

(c)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 10.4    *Effect of Failure of a Condition.*

If the conditions listed in Section 10.2 of this Plan are not satisfied or waived in accordance with Section 10.3 of this Plan on or before the later of (a) the first Business Day following the date that is seventy-five (75) calendar days after the date on which the Confirmation Order is entered, and (b) such later date set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (ii) prejudice in any manner the rights of any Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Entity.

## ARTICLE XI.        EFFECT OF CONFIRMATION.

### 11.1    *Binding Effect.*

As of the Effective Date, this Plan shall bind (a) the Debtors; (b) the Liquidating Agent; (c) all holders of Claims against and Interests in the Debtors and their respective successors and assigns, regardless of whether any such holders were (i) Impaired or Unimpaired under this Plan, (ii) deemed to accept or reject this Plan, (iii) failed to vote to accept or reject this Plan, and/or (iv) voted to reject this Plan; (d) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan; (e) each Entity acquiring property under this Plan and the Confirmation Order; and (f) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

### 11.2    *Vesting of Assets.*

Except as otherwise provided in this Plan (including in all respects Sections 11.6(a), 11.6(b), 11.7, and 11.8), the Plan Supplement, or the Confirmation Order, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors under or in connection with this Plan or the Plan Supplement, shall vest in the Wind Down Estates free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Subject to the terms of this Plan, on and after the Effective Date, the Liquidating Agent may operate the Debtors' businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims), Interests, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, the Liquidating Agent may pay the charges that it incurs on behalf of the Wind Down Estates after the Confirmation Date for Professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

### 11.3    *Pre-Confirmation Injunctions and Stays.*

Unless otherwise provided in this Plan or a Final Order of the Bankruptcy Court, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the date of entry of the Confirmation Order, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 11.4    *Injunction Against Interference with Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

### 11.5    *Plan Injunction.*

(a)    Except as otherwise expressly provided in this Plan, or for distributions required to be paid or delivered pursuant to this Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that are (i) released pursuant to Section 11.6(a) or Section 11.6(b) of this Plan, or (ii) subject to exculpation pursuant to Section 11.7 of this Plan, and (iv) all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind Down Estates, the Liquidating Agent, an Estate, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 11.7 of this Plan with respect to the Exculpated Parties), as applicable, with respect to such Claims, Interests, and Causes of Action:  (A) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (B) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly, or indirectly, any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (C) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (D) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless (x) such Entity has timely asserted such setoff right either in a filed proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the Debtors as of the Effective Date; (E) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan and Confirmation Order, to the full extent permitted by applicable law; and (F) commencing or continuing, in any manner or in any

place, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to this Plan; *provided* that such Entities that have held, hold, or may hold Claims against, Interests in, or Causes of Action against, a Debtor, the Liquidating Agent, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of this Plan.

(b)      Subject in all respects to <u>Section 12.1</u> of this Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part: the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Estates; the Liquidating Agent; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the RSA; the Disclosure Statement; the DIP Orders; the Settlement and Release Agreement; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with this Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in this Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of this Plan (including the Plan Supplement); the funding of this Plan; the administration and implementation of this Plan or Confirmation Order, including the distribution of property under this Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not, with respect to a Released Party, been released under this Plan or, with respect to an Exculpated Party, been exculpated under this Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been released or exculpated (as applicable) and, only to the extent legally permissible and as provided for in <u>Section 12.1</u> of this Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.  For the avoidance of doubt, the foregoing sentence is subject to applicable law regarding the Bankruptcy Court's subject matter jurisdiction to hear such matter.

**11.6    *Releases.***

(a)      **Releases by the Debtors and their Estates.  Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtors, the Wind Down Estates, the Liquidating Agent, and the Estates, in each case on behalf of themselves and their respective successors, assigns, any Estate representative(s) appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy**

Code, and any and all other Entities that may purport to assert any Cause of Action derivatively by or through any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Estates, the Liquidating Agent, or the Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors, the Wind Down Estates, the Liquidating Agent, or the Estates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part:  any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Estates; the Liquidating Agent; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the RSA; the Disclosure Statement; the DIP Orders; the Settlement and Release Agreement; the Note Purchase Agreement (other than with respect to Pitney Bowes and any guarantor, whose obligations under the Note Purchase Agreement or the Note Purchase Documents shall continue as legal, valid, binding and non-avoidable obligations and the security interests securing those obligations shall remain valid, binding, enforceable, non-avoidable and properly perfected); the Secured Senior Takeback Note; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with this Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in this Plan; the business or contractual or other arrangements or other interactions between any Debtor and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of this Plan (including the Plan Supplement); the funding of this Plan; the administration and implementation of this Plan or the Confirmation Order, including the distribution of property under this Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in this **Section 11.6(a)** (i) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state or foreign laws governing fraudulent or otherwise avoidable obligations, transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the

Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; and (ii) shall not release any Claims or Causes of Action reflected on the Schedule of Retained Causes of Action, which, for the avoidance of doubt, shall not include any Claims or Causes of Action against any Released Parties.

(b)     **Third-Party Releases.**  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or assertable on behalf of the Releasing Parties that such Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Estates; the Liquidating Agent; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the RSA; the Disclosure Statement; the DIP Orders, the Settlement and Release Agreement; the Note Purchase Agreement (other than with respect to Pitney Bowes and any guarantor, whose obligations under the Note Purchase Agreement or the Note Purchase Documents shall continue as legal, valid, binding and non-avoidable obligations and the security interests securing those obligations shall remain valid, binding, enforceable, non-avoidable and properly perfected); the Secured Senior Takeback Note; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with this Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in this Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party in connection with the Debtors; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of this Plan (including the Plan Supplement); the funding of this Plan; the administration and implementation of this Plan or the Confirmation Order, including the distribution of property under this Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases contained in this **Section 11.6(b)** shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud

shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state or foreign laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### 11.7   *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action based on, relating to, or in any manner arising from, in whole or in part, from the Petition Date through the Effective Date: the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Wind Down Estates; the Liquidating Agent; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the RSA; the Disclosure Statement; the DIP Orders, the Settlement and Release Agreement, the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with this Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the business or contractual or other arrangements or other interactions between any Debtor and any Exculpated Party; the restructuring of any Claim or Interest during the Chapter 11 Cases or on the Effective Date; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of this Plan (including the Plan Supplement); the funding of this Plan; the administration and implementation of this Plan or Confirmation Order, including the distribution of property under this Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the exculpations in this Section 11.7 shall not release or exculpate any Entity from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state or foreign laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### 11.8   *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released or exculpated pursuant to this Plan, including the claims, obligations, suits, judgments, damages,

demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

### 11.9    *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments thereof under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a), 510(b), or 510(c) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right, to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 11.10    *Retention of Causes of Action and Reservation of Rights*.

Except as otherwise provided in this Plan, including in all respects Sections 11.6(a), 11.6(b), 11.7, and 11.8, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law. Except as otherwise provided in this Plan, including in all respects Sections 11.6(a), 11.6(b), 11.7, and 11.8, the Liquidating Agent, on behalf of the Debtors and/or the Wind Down Estates (as applicable), shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 11.11    *Ipso Facto and Similar Provisions Ineffective*.

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Entity based on (i) the insolvency or financial condition of a Debtor, (ii) the commencement of the Chapter 11 Cases, or (iii) the confirmation or consummation of this Plan, including any change of control that shall occur as a result of such consummation.

## ARTICLE XII.    RETENTION OF JURISDICTION.

### 12.1    *Retention of Jurisdiction*.

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to sections 1334 and 157 of title 28 of the United States Code, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)  to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and any disputes over Cure Amounts resulting therefrom;

(b)  to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order;

(c)  to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)  to ensure that distributions to holders of Allowed Claims and Interests are accomplished as provided in this Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under this Plan;

(e)  to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)  to enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)  to issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)  to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code or approve any modification of the Confirmation Order or any contract, instrument, release, or other agreements or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order (in each case, to the extent Bankruptcy Court approval is necessary), or to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, the Confirmation Order, or any order of the Bankruptcy Court, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)  to hear and determine all Fee Claims;

(j)  to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)  to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or related to any of the foregoing;

(l)     to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, Plan Supplement, and Confirmation Order;

(m)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)     to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(p)     to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose for determining whether a Claim or Interest is discharged hereunder or for any other purposes;

(q)     to hear, adjudicate, decide, or resolve any and all matters related to ARTICLE XI of this Plan, including the releases, discharge, exculpations, and injunctions issued thereunder;

(r)     to enforce all orders previously entered by the Bankruptcy Court

(s)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(t)     to recover all Assets of the Debtors and property of the Estates, wherever located; and

(u)     to enter a final decree closing each of the Chapter 11 Cases.

**12.2**    ***Courts of Competent Jurisdiction.***

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIII.        MISCELLANEOUS PROVISIONS.

### 13.1    *Statutory Fees.*

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors or the Liquidating Agent in full on the Effective Date.  On and after the Effective Date, the Liquidating Agent shall pay any and all Statutory Fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, each Debtor or Liquidating Agent, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay Statutory Fees to the U.S. Trustee until the earliest of that particular Debtor's, or Liquidating Agent's (on behalf of a Debtor), as applicable, case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a proof of Claim or any other request for payment of Statutory Fees.

### 13.2    *Exemption from Certain Transfer Taxes.*

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the Confirmation Order), shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, document recording tax, intangibles or similar tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

### 13.3    *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee, if any, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

### 13.4    *Request for Expedited Determination of Taxes.*

The Debtors and Liquidating Agent shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Wind Down Completion Date.

### 13.5    *Dates of Actions to Implement Plan.*

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### 13.6    *Amendments.*

(a)    Plan Modifications.  Subject to the applicable provisions of the RSA and the DIP Note Documents, this Plan may be amended, supplemented, or otherwise modified by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, and subject to the applicable provisions of the RSA and the DIP Note Documents, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of this Plan and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, supplemented, or otherwise modified.

(b)    Certain Technical Amendments.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, as long as such technical adjustments and modifications do not adversely affect in a material way the treatment of the holders of Claims or Interests under this Plan.

### 13.7    *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date.  If this Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur on the Effective Date, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, any Debtor or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the holders of Claims, or (iii) constitute an admission, acknowledgement, offering, or undertaking of any sort by any Debtor or any other Entity.

### 13.8    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that this Plan or the Confirmation Order provides otherwise, the rights, duties, and obligations arising under this Plan and the Confirmation Order shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect

to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

### 13.9 *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Liquidating Agent, the holders of Claims or Interests (regardless of whether the holders of such Claims or Interests are deemed to have accepted or rejected this Plan), the Released Parties, and each of their respective successors and assigns.

### 13.10 *Waiver of Stay.*

The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen days after entry of the order shall be waived by the Confirmation Order.  The Confirmation Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

### 13.11 *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

### 13.12 *Entire Agreement.*

On the Effective Date, this Plan, the Plan Supplement, the Confirmation Order, and the Settlement and Release Agreement (the assumption of which agreement is, to the extent not already approved pursuant to a Final Order, approved by the Confirmation Order) shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order; *provided, however*, nothing in this Section 13.12 shall have any effect on the validity or enforceability of the RSA.

### 13.13 *Computing Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth in this Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.14 *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to this Plan (including the Plan Supplement) are incorporated into and are a part of this Plan as if set forth in full in this Plan.

**13.15** _**Notices.**_

All notices, requests, and demands hereunder shall be in writing (including by facsimile or email transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile or email transmission, upon confirmation of transmission, addressed as follows:

(1) If to the Debtors, to:

DRF Logistics LLC
DRF, LLC
7171 Southwest Parkway
Austin, TX 78735

Attention:   Eric Kaup, Chief Restructuring Officer

with a copy (which will not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

Attention:   Ray Schrock, Esq. (Ray.Schrock@weil.com)
                   Ronit Berkovich, Esq. (Ronit.Berkovich@weil.com)
                   Lauren Tauro, Esq. (Lauren.Tauro@weil.com)
                   Alexander P. Cohen, Esq. (Alexander.Cohen@weil.com)

(2) If to Pitney Bowes, to:

Vinson & Elkins LLP
1114 Avenue of the Americas
New York, New York 10036

Attention:   David S. Meyer, Esq. (dmeyer@velaw.com)
                   George R. Howard, Esq. (ghoward@velaw.com)
                   Steven Zundell, Esq. (szundell@velaw.com)

(3)       If to Oaktree, to:

Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Attention:   Ari Blaut, Esq. (blauta@sullcrom.com)
                   Benjamin Beller, Esq. (bellerb@sullcrom.com)

After the occurrence of the Effective Date, the Liquidating Agent has authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. Notwithstanding the foregoing, the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary.  After the occurrence of the Effective Date, the Liquidating Agent is authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed such renewed requests.

### 13.16   *Reservation of Rights.*

Except as otherwise provided herein, this Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provision of this Plan, or the taking of any action by the Debtors with respect to this Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

*[Remainder of Page Intentionally Left Blank]*

Dated:  August 9, 2024
          New York, New York

Respectfully Submitted,

DRF Logistics, LLC

By: _____

Name: Eric Kaup
Title: Chief Restructuring Officer


DRF, LLC

By: _____

Name: Eric Kaup
Title: Chief Restructuring Officer

*[Signature Page to Joint Plan of Liquidation]*